**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

STEPHEN BUSHANSKY, On Behalf of
Himself and All Others Similarly Situated,

     Plaintiff,                           Case No.

v.

FCB FINANCIAL HOLDINGS, INC.,
VINCENT S. TESE, LESLIE J. LIEBERMAN,
ALAN S. BERNIKOW, THOMAS E.
CONSTANCE, HOWARD R. CURD, KENT S.
ELLERT, GERALD LUTERMAN, WILLIAM
LAWRENCE MACK, PAUL ANTHONY
NOVELLY II, STUART I. ORAN, and
FREDERIC V. SALERNO,

     Defendants.

_____ /

**CLASS ACTION COMPLAINT**

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his

complaint against defendants, alleges upon personal knowledge with respect to himself, and upon

information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations

herein, as follows:

**NATURE OF THE ACTION**

1.     Plaintiff brings this class action on behalf of the public stockholders of FCB

Financial Holdings, Inc. ("FCB" or the "Company") against FCB and the members of its Board of

Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and

20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a),

and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. 240.14a-9, and to

enjoin the vote on a proposed transaction, pursuant to which FCB will be acquired by Synovus Financial Corp. ("Synovus") through Synovus' wholly-owned subsidiary Azalea Merger Sub Corp. ("Merger Sub") (the "Proposed Transaction").

2.      On July 24, 2018, FCB and Synovus issued a joint press release announcing they had entered into an Agreement and Plan of Merger (the "Merger Agreement").  Under the terms of the Merger Agreement, FCB stockholders will be entitled to receive 1.055 shares of Synovus common stock per share of FCB Class A common stock (the "Merger Consideration").  The Proposed Transaction is valued at approximately $2.9 billion.

3.      On September 14, 2018, Synovus and FCB filed a joint proxy statement/prospectus on Form S-4 (the "Registration Statement") with the SEC.  The Registration Statement, which recommends that FCB stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's and Synovus' financial projections, relied upon by FCB's financial advisors, Sandler O'Neill & Partners, L.P. ("Sandler"), Guggenheim Securities, LLC ("Guggenheim"), and Evercore Group L.L.C. ("Evercore," and together with Sandler and Guggenheim, the "Financial Advisors"), in their financial analyses; (ii) the valuation analyses prepared by the Financial Advisors in connection with the rendering of their fairness opinions; (iii) the background process leading to the Proposed Transaction; and (iv) FCB insiders' potential conflicts of interest.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as FCB stockholders need such information in order to cast a fully-informed vote in connection with the Proposed Transaction.

4.      In short, unless remedied, FCB's public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information

concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.    This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  FCB is headquartered in this District.  Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

8.    Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of FCB common stock.

9.    FCB is a Delaware corporation and maintains its principal executive offices at 2500 Weston Road, Suite 300, Weston, Florida 33331.  FCB is a bank holding company, with one wholly-owned national bank subsidiary, Florida Community Bank, National Association (the

"Bank").   FCB is the largest community banking company and second largest Florida-based independent bank in Florida.  FCB's common stock is traded on the New York Stock Exchange under the ticker symbol "FCB."

10.     Defendant Vincent S. Tese ("Tese") has been Executive Chairman of the Company since November 2009 and a director of the Company since October 2010.  Defendant Tese has also served as Executive Chairman and a director of the Bank since January 2010.

11.     Defendant Leslie J. Lieberman ("Lieberman") has been Executive Vice Chairman of the Company since November 2009 and a director of the Company since October 2010. Defendant Lieberman has also served as Executive Vice Chairman and a director of the Bank since January 2010.

12.     Defendant Alan S. Bernikow ("Bernikow") has been a director of the Company since October 2010 and a director of the Bank since January 2010.

13.     Defendant Thomas E. Constance ("Constance") has been a director of the Company since October 2010 and a director of the Bank since March 2010.

14.     Defendant Howard R. Curd ("Curd") has been a director of the Company since October 2010 and a director of the Bank since September 2010.

15.     Defendant Kent S. Ellert ("Ellert") has been President of the Company since November 2009, Chief Executive Officer ("CEO") of the Company since March 2013 and a director of the Company since October 2010.  Defendant Ellert has also served as President of the Bank since January 2010, CEO of the Bank since January 2013, and a director of the Bank since January 2010.  Defendant Ellert previously served as Chief Operating Officer ("COO") of the Company from November 2009 to March 2013 and as COO of the Bank from January 2010 to January 2013.

16.     Defendant Gerald Luterman ("Luterman") has been a director of the Company since October 2010 and a director of the Bank since January 2010.

17.     Defendant William Lawrence Mack ("Mack") has been a director of the Company since October 2010 and a director of the Bank since September 2010.

18.     Defendant Paul Anthony Novelly II ("Novelly") has been a director of the Company since October 2010 and a director of the Bank since September 2010.

19.     Defendant Stuart I. Oran ("Oran") has been a director of the Company since October 2010 and a director of the Bank since January 2010.

20.     Defendant Frederic V. Salerno ("Salerno") has been a director of the Company since October 2010 and a director of the Bank since July 2010.

21.     The defendants identified in paragraphs 10-20 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

22.     Synovus is a Georgia corporation, with its principal executive offices located at 1111 Bay Avenue, Suite 500, Columbus, Georgia 31901.  It is a financial services company with over $31 billion in assets.  Synovus' common stock is traded on the New York Stock Exchange under the ticker symbol "SNV."

23.     Merger Sub is a Delaware corporation and a direct wholly-owned subsidiary of Synovus.

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own FCB common stock (the "Class").  Excluded from the Class are defendants and their affiliates, immediate families, legal

representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

25.     This action is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.  The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of September 10, 2018, there were 46,805,805 shares of FCB Class A common stock outstanding.  All members of the Class may be identified from records maintained by FCB or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

26.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a)     Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c)     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

27.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.  Plaintiff has retained competent counsel experienced in litigation of this nature.

28.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.   Plaintiff knows of no difficulty to be encountered in the

management of this action that would preclude its maintenance as a class action.

29.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

30.     FCB is a bank holding company that operates the Bank.  The Company provides a range of financial products and services to individuals and businesses through 46 branches in south and central Florida.  Since FCB's formation in April 2009, the Company has acquired eight failed banks from the Federal Deposit Insurance Corporation ("FDIC") as receiver, as well as Great Florida Bank (together, the "Acquisitions").  As a result of the Acquisitions, combined with FCB's internal growth, as of December 31, 2017, the Company's consolidated total assets were $10.68 billion, total deposits were $8.67 billion, and total stockholders' equity was $1.18 billion.

31.     Most recently, on March 1, 2018, the Company announced it had completed the acquisition of Floridian Community Holdings, Inc. ("Floridian Community").  As of December 31, 2017, Floridian Community had approximately $529 million in total assets.  In the press release announcing completion of the acquisition, defendant Ellert stated:

> We are extremely pleased to have completed this transaction in three months, as we believe it represents a low risk, in market strategic acquisition that is financially accretive in first year. With Floridian, we are truly Stronger than Ever, as FCB continues to deliver best in class organic growth across the Florida marketplace. Furthermore, this acquisition strengthens our current franchise by accelerating our retail network expansion in the key Palm Beach market.

32.     On April 24, 2018, the Company reported strong financial results for the first quarter of 2018.  Net income was $40.1 million, or $0.84 per share, a 3% increase from the first quarter of 2017.  As of March 31, 2018, total loan portfolio, gross of the allowance for loan losses,

grew to $8.7 billion, compared to $6.9 billion as of March 31, 2017, a $726.6 million or 9% increase from December 31, 2017.  Commenting on the quarter's financial results, defendant Ellert stated:

> The first quarter was another great quarter for FCB, as we grew the balance sheet by nearly $1 billion while increasing our net interest margin by 5 basis points, closed our Floridian Community acquisition in less than 3 months and continued our organic momentum with over $435 million of organic deposit growth and over $495 million of organic loan fundings. Our organic growth and community centric approach continues to differentiate us in the market as we solidify our position as Florida's largest community banking company.

33.     On July 24, 2018, FCB announced its second quarter 2018 financial results.  For the quarter, net income was $42.7 million, or $0.87 per share, a 22% increase compared to the second quarter of 2017.  Adjusted net income was $46.0 million, or $0.94 per share, a 41% increase from the second quarter of 2017.  The Bank's new loan portfolio totaled $8.2 million, a 3% increase from the first quarter of 2018.  Defendant Ellert commented on the quarter's strong financial results, stating:

> The second quarter was another strong quarter for FCB, as we expanded our net interest margin by 5 basis points, fully integrated our Floridian Community acquisition in less than 3 months and continued our organic momentum with over $370 million of organic deposit growth and over $480 million of organic loan fundings. Our organic growth and customer centric approach continues to differentiate us in the market as Florida's largest community banking company.

**The Sale Process**

34.     In March 2018, FCB engaged the Financial Advisors in connection with the Company's consideration of a potential business combination or sale transaction.

35.     Between March 29 and April 16, 2018, FCB entered into confidentiality agreements with eight larger regional banks, including Synovus.  The Registration Statement fails to disclose whether these confidentiality agreements include standstill provisions that are still in effect and operate to preclude any of these parties from submitting a topping bid for the Company.

36.     Throughout April and May 2018, Company management met with four potential counterparties, including Synovus, regarding a potential business combination.

37.     On July 3, 2018, Synovus proposed an acquisition of FCB at an exchange ratio of 1.05 shares of Synovus common stock per FCB Class A share. Two days later, Synovus submitted a proposal with an exchange ratio of 1.055 Synovus shares per FCB Class A share, which was Synovus' best and final offer.

38.     At a July 23, 2018 Board meeting, the Financial Advisors each rendered their fairness opinions to the Board. The Board then approved the Merger Agreement. That evening, Synovus and FCB executed the Merger Agreement.

**The Proposed Transaction**

39.     On July 24, 2018, Synovus and FCB issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> COLUMBUS, Ga. & WESTON, Fla -- Synovus Financial Corp. (NYSE: SNV) and FCB Financial Holdings, Inc. (NYSE: FCB) today jointly announced their entry into a definitive merger agreement under which Synovus will acquire FCB Financial Holdings, Inc., owner of Florida Community Bank (FCB), Florida's largest community bank. With the addition of FCB, Synovus will become a top five regional bank by deposits in the Southeast region with pro forma $36 billion in deposits and $44 billion in assets. The transaction is expected to close by the first quarter of 2019.
>
> The combination of FCB with Synovus will create the largest mid-cap bank in the Southeast by deposits, and will elevate the company's growth profile through a deepened presence in high-growth Florida markets. Following the closing, FCB will merge with Synovus Bank and operate under the Synovus brand, and FCB Financial Holdings President and CEO Kent Ellert will be executive vice president of Synovus and Florida market president.
>
> Under the terms of the merger agreement, FCB shareholders will receive a fixed ratio of 1.055 shares of Synovus common stock for each common share of FCB in an all-stock transaction. Based on Synovus' closing share price on July 23, 2018, the transaction is valued at $58.15 per FCB share or $2.9 billion in aggregate. Following completion of the merger, former FCB shareholders will own approximately 30% of the combined company. In addition, based on the exchange

ratio, Synovus' most recent quarterly dividend translates to a pro forma annualized dividend of $1.06 per FCB share. The transaction is expected to be tax free to FCB shareholders.

"We look forward to welcoming FCB customers and team members to the Synovus family and are enormously excited about the growth and value-creation opportunities this transaction presents for our combined companies and respective shareholders," said Kessel Stelling, Synovus chairman and CEO. "This acquisition will expand our presence in the high-growth South Florida marketplace while leveraging FCB's market leading reputation, culture, and successful organic growth platform."

"The FCB team is excited to join the Synovus family and we look forward to being part of one of the most prominent and successful regional banks in the country," said FCB Financial Holdings President and CEO Kent Ellert. "We are enthusiastic about our similar cultures, which are community- and customer-centric, and are confident our combined companies will help us build upon the great client relationships that have resulted in more than $11 billion of organic loan production and 22 consecutive quarters of record operating results for FCB."

In Florida, Synovus gains $9.9 billion in deposits and 50 full-service banking centers, with significant market share in all top 10 Florida markets including Miami-Dade, the largest market by population in the Southeast. The transaction deepens Synovus' commitment to Florida, complementing its presence in Pensacola, Tampa, Jacksonville, Orlando, Sarasota, and Naples with FCB's market-leading presence across South Florida.

Synovus expects approximately $40 million in pretax synergies to be fully realized by 2020. Excluding one-time charges, Synovus expects the acquisition to be approximately 6.5% accretive to earnings per common share in 2020 and to deliver strong returns on capital. The transaction is expected to produce tangible book value per share dilution of 3.3% with an earnback period of less than two years.

## Insiders' Interests in the Proposed Transaction

40.     FCB insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and FCB's public stockholders.

41.     Notably, certain of the Company's executive officers have secured positions for themselves upon consummation of the Proposed Transaction. As set forth in the Registration

Statement:

> Concurrently with the signing of the merger agreement, Synovus also entered into five-year employment agreements with Messrs. Ellert and Baiter (such agreements, the "new employment agreements"). These new employment agreements, which will become effective upon the closing of the merger, provide that Mr. Ellert will serve as Executive Vice President of Synovus and President of Florida Region, and that Mr. Baiter will serve as Regional Credit Officer– Florida.[1]

Registration Statement at 90.

42.     Moreover, in connection with the execution of the Merger Agreement, the Bank entered into letter agreements (the "Bank letter agreements") with Baiter and defendants Ellert, Tese and Lieberman.  Pursuant to the Bank letter agreements, each of these Company insiders will receive lump-sum cash payments in connection with the termination of their employment agreements with the Bank, in the following amounts:

| | |
|---|---|
| Kent S. Ellert | $11,900,000 |
| Vincent S. Tese | $4,050,000 |
| Les J. Lieberman | $4,050,000 |
| James E. Baiter | $1,400,000 |

43.     Further, if they are terminated in connection with the Proposed Transaction, the Company's named executive officers are set to receive substantial compensation, as set forth in the following table:

| Name | Cash ($)[1] | Equity ($)[2] | Total ($) |
|---|---|---|---|
| *Named Executive Officers* | | | |
| Kent S. Ellert | 11,900,000 | 9,508,838 | 21,408,838 |
| Vincent S. Tese | 4,050,000 | 2,263,304 | 6,313,304 |
| Les J. Lieberman | 4,050,000 | 2,263,304 | 6,313,304 |
| Jack W. Partagas | 412,500 | 421,791 | 834,291 |
| James E. Baiter | 1,600,000 | 640,276 | 2,240,276 |

**The Registration Statement Contains Material Misstatements and Omissions**

---

[1] James E. Baiter ("Baiter") is Executive Vice President and Chief Credit Officer of the Company and the Bank.

44.     The defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to FCB's stockholders.  The Registration Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed voting decision in connection with the Proposed Transaction.

45.     Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's and Synovus's financial projections, relied upon by FCB's Financial Advisors in their financial analyses; (ii) the valuation analyses prepared by the Financial Advisors in connection with the rendering of their fairness opinions; (iii) the background process leading to the Proposed Transaction; and (iv) FCB insiders' potential conflicts of interest. Accordingly, FCB stockholders are being asked to make a voting decision in connection with the Proposed Transaction without all material information at their disposal.

***Material Omissions Concerning FCB's and Synovus's Financial Projections***

46.     The Registration Statement omits material information regarding the Company's and Synovus's financial projections relied upon by the Financial Advisors for their analyses.

47.     For example, the Registration Statement sets forth that in connection with its opinion, Guggenheim reviewed and considered, among other things:

- certain estimated cost savings and other combination benefits and estimated costs to achieve such synergies . . . expected to result from the transaction, all as prepared and provided by Synovus' senior management

Registration Statement at 64.

48.     Additionally, the Registration Statement sets forth that Guggenheim conducted such other studies, analyses, inquiries and investigations as Guggenheim deemed appropriate and with respect to the information used in arriving at its opinion, Guggenheim noted that:

- Neither FCB nor Synovus furnished Guggenheim Securities with any internally generated stand-alone financial projections/forecasts regarding FCB or Synovus (other than the financial forecasts and, in the case of FCB, a budget for the period through June 30, 2019 which was made available to Guggenheim Securities but nor for purposes of its opinion).

Registration Statement at 65.

49.     Similarly, the Registration Statement sets forth that in connection with its opinion, Evercore reviewed and considered, among other things:

> certain non-public long-term growth rate assumptions relating to FCB furnished by senior management of FCB, certain non-public long-term growth rate and dividend assumptions for Synovus furnished by senior management of Synovus and the amount and timing of the cost savings estimated by the senior management of Synovus to result from the transaction (which we refer to in this section for purposes of this description of Evercore's opinion, collectively, as the "synergies") as well as certain pro forma purchase accounting adjustments furnished by senior management of Synovus.

Registration Statement at 67-68.

50.     However, the Registration Statement fails to disclose (i) certain estimated cost savings and other combination benefits the amount and timing of the cost savings estimated by the senior management of Synovus to result from the transaction, or synergies, as well as estimated costs to achieve such synergies certain; (ii) pro forma purchase accounting adjustments furnished by senior management of Synovus; and (iii) FCB's budget for the period through June 30, 2019 which was made available to Guggenheim.

51.     The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: "Opinions of FCB's Financial Advisors" and "Unaudited Financial Forecasts."

***Material Omissions Concerning the Financial Advisors' Financial Analyses***

13

52.     The Registration Statement describes the Financial Advisors' fairness opinions and the various valuation analyses they performed in support of their opinions. However, the description of the Financial Advisors' fairness opinions and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, FCB's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on the Financial Advisors' fairness opinions in determining whether to vote in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to FCB's stockholders.

53.     With respect to the Financial Advisors' *FCB Net Present Value Analysis* for FCB on a stand-alone basis, the Registration Statement fails to disclose quantification of the inputs used to derive the discount rates ranging from 9.0% to 14.0%.

54.     With respect to the Financial Advisors' *FCB Net Present Value Analysis* for Synovus on a stand-alone basis, the Registration Statement fails to disclose quantification of the inputs used to derive the discount rates ranging from 8.0% to 13.0%.

55.     With respect to the Financial Advisors' *Pro Forma Merger Analysis*, the Registration Statement fails to disclose the specific accretion and dilution to Synovus's estimated earnings per share and tangible book value per share in the years ending December 31, 2019 through December 31, 2021.

56.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better

understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

57.     The omission of this information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: "Opinions of FCB's Financial Advisors" and "Unaudited Financial Forecasts."

***Material Omissions Concerning the Background Process of the Proposed Transaction***

58.     The Registration Statement omits material information relating to the sale process leading up to the Proposed Transaction.

59.     In connection with FCB's outreach to potentially interested parties, the Registration Statement sets forth that, between March 29, 2018 and April 16, 2018, FCB entered into confidentiality agreements with eight larger regional banks, including Synovus on April 9, 2018. Registration Statement at 50.   Yet, the Registration Statement fails to disclose whether the confidentiality agreements FCB entered into with the interested regional banks, excluding Synovus, include standstill provisions that are still in effect and/or contain "don't-ask-don't-waive" ("DADW") standstill provisions that are presently precluding these prospective bidders from making a topping bid for the Company.

60.     The disclosure of the terms of the standstill provisions in the confidentiality agreements FCB entered into with potential buyers is crucial to FCB stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

61.     The omission of this information renders the statements in the "Background of the Merger" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning FCB Insiders' Potential Conflicts of Interest*

62.     The Registration Statement fails to disclose material information concerning potential conflicts of interest faced by the Company's directors and executive officers.

63.     The Registration Statement sets forth that:

> Concurrently with the signing of the merger agreement, Synovus also entered into five-year employment agreements with Messrs. Ellert and Baiter (such agreements, the "new employment agreements"). These new employment agreements, which will become effective upon the closing of the merger, provide that Mr. Ellert will serve as Executive Vice President of Synovus and President of Florida Region, and that Mr. Baiter will serve as Regional Credit Officer– Florida.

Registration Statement at 90.

64.     However, the Registration Statement fails to disclose the details of any employment-related discussions and negotiations that occurred between Synovus and FCB executive officers, including who participated in all such communications, when they occurred, and their content, as well as whether any of Synovus's prior proposals or indications of interest mentioned management retention or board membership in the combined company.

65.     Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

66.     The omission of this information renders the statements in the "Background of the Merger," "Interests of FCB Directors and Executive Officers in the Merger" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

67.     The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Registration

Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed decision whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

<u>COUNT I</u>

**Class Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9 Promulgated Thereunder**

68.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

69.     During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

70.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement.  The Registration Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the actual intrinsic standalone value of the Company, the financial analyses performed by the Company's financial advisors, the sales process for the Company, and Company insiders' potential conflicts of interest.  The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

71.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.

72.     By reason of the foregoing, defendants violated Section 14(a) of the Exchange

Act and SEC Rule 14a-9 promulgated thereunder.

73.     Because of the false and misleading statements in the Registration Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Class Claims Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act

74.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

75.     The Individual Defendants acted as controlling persons of FCB within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of FCB and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

76.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

77.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Registration Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were

thus directly involved in the making of the Registration Statement.

78.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

79.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

80.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, FCB's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of FCB, and against defendants, as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to FCB stockholders;

C.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated:  October 9, 2018

Respectfully submitted,

/s/ *Katherine Earle Yanes*
Katherine Earle Yanes, Fla. Bar# 0159727
James E. Felman, Fla. Bar# 0775568
Kynes Markman & Felman, PA
PO Box 3396, Tampa, FL 33601
(813) 229-1118 *telephone*
(813) 221-6750 *facsimile*
KYanes@kmf-law.com
JFelman@kmf-law.com
*Co-Counsel for Plaintiff*

**OF COUNSEL:**
**WEISSLAW LLP**
Richard A. Acocelli, Esquire
Michael A. Rogovin, Esquire
Kelly K. Moran, Esquire
1500 Broadway, 16th Floor
New York, New York 10036
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
mrogovin@weisslawllp.com
racocellie@weisslawllp.com
kmoran@weisslawllp.com

## CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

The undersigned certifies as follows:

1.      I have reviewed the complaint in this matter against FCB Financial Holdings, Inc. ("FCB") and others and authorized the filing thereof.

2.      I did not purchase the security that is the subject of this action at the direction of counsel or in order to participate in any private action.

3.      I am willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.      I have been, at all relevant times stated in the complaint, the holder of 100 shares of FCB stock.

5.      I have not sought to serve or served as a class representative under the federal securities laws in the last three years, other than as listed below (if any):


6.      I will not accept any payment for serving as a representative party beyond the undersigned's pro rata share of any recovery, except as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I hereby certify, under penalty of perjury, that the foregoing is true and correct.

Stephen bushansky (Oct 3, 2018)

Stephen Bushansky